520 So.2d 805 (1987)
Richard A. SPEARS, Plaintiff-Appellant,
v.
McCORMICK & COMPANY, INC., d/b/a Alexandria Daily Town Talk, et al., Defendants-Appellees.
No. 86-953.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1987.
Writ Denied January 8, 1988.
*806 Chris J. Roy, Alexandria, and Henry Lemoin, Pineville, plaintiff-appellant.
Provosty, Sadler & Delaunay, Ronald J. Fiorenza, Alexandria, for defendants-appellees.
Before DOMENGEAUX, DOUCET and LABORDE, JJ.
LABORDE, Judge.
Richard Spears and his mother, Bessie Barton, filed separate lawsuits[1] against McCormick and Company, Inc., the owner and publisher of the Alexandria Daily Town Talk newspaper (the paper) along with certain of its employees, Kathy Des Jardins and James R. Butler, Jr. The suit was based upon the final segment of a four-part series run by the paper entitled "Manhandled" which described the plight of women who are battered by their husbands. Although the characters in the article were given the fictitious names of "Gloria" and "Ron," Spears claims that "Ron" was easily identifiable as being Spears and that the wicked mother-in-law described in the article was easily identifiable as his mother, Bessie Barton. The plaintiffs claim that defendants should be held liable for defamation, invasion of privacy, and also for breach of an alleged stipulation pour autrui made in their favor.
The article in question began with the disclaimer: "A woman who can't break free from her abusive exhusband tells her story in the final segment of this four-part *807 series on battered women. Her name, like the names of every victim and abuser mentioned in the six [sic] previous articles has been changed." The story describes the beatings and mistreatment that "Gloria" received from "Ron" and also several problems encountered between "Gloria" and her mother-in-law. The interview of the wife/victim by the paper was done with the understanding that her identity would remain anonymous (thus the pseudonym "Gloria" was used). In fact, the reporter for the paper knew the woman's real name only as Gwen (her real name was Gwendolyn Spears, the former wife of Richard Spears). Plaintiffs claim that sufficient steps were not taken to cover up the identities of the persons described in the article and that the information given in the article made it obvious to whom the article referred. They claim that the article made them the butt of jokes and brought them much ridicule in Poland, a small community in which they live outside of Alexandria. Defendants filed a motion for summary judgment on all three of the plaintiffs' claims and the trial court granted summary judgment dismissing all of the claims. Plaintiffs appeal the granting of the summary judgment; specifically, the plaintiffs argue that there are genuine issues of material fact as to their claims of defamation, invasion of privacy, and breach of a stipulation pour autrui.

DEFAMATION
In order for a plaintiff to prevail in a defamation case, the elements that must be proven are: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196, 198 (La.1980). For words to be considered as defamatory, the following definition has been given:
"A statement is defamatory when it tends to expose a person to contempt, hatred, ridicule or obloquy; or which causes a person to be shunned or avoided; or which has a tendency to deprive him of the benefits of public confidence or injure him in his occupation; and includes almost any language which upon its face has a natural tendency to injure the person's reputation, either generally or with respect to his occupation. The intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous but from the context as well, and the true meaning must be ascertained from a consideration of all parts of the statement as well as the circumstances of its publication. The test is the effect the article is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate."
Deville v. Defending Attorneys for Continental Oil Co., 448 So.2d 885, 887 (La.App. 3d Cir.1984), citing Wattigny v. Lambert, 408 So.2d 1126 (La.App. 3d Cir.), writ denied, 410 So.2d 760 (La.1981), cert. denied, 457 U.S. 1132, 102 S.Ct. 2957, 73 L.Ed.2d 1349 (1982).
Plaintiffs contend that the words used in the article are defamatory and that plaintiffs are the identifiable persons about whom the article was written. The broad definition of defamation as stated in Deville may arguably be met by some of the statements made in the article.[2] Whether the plaintiffs are the identifiable victims of the defamatory language may be less certain.[3] We, however, feel that a determination *808 as to whether or not the words used in the article could be construed as being defamatory does not have to be made here. Although there is no dispute as to a publication being made and a resulting injury could arguably be proven (assuming that plaintiffs could show that they were the identifiable subjects of the newspaper article), we conclude that the plaintiffs do not have sufficient proof of malice and falsity to raise a genuine issue of fact to overcome the trial court's grant of summary judgment.
Plaintiffs argue that the trial court's granting of defendant's motion for summary judgment was improper. They claim that it is up to the defendant to prove the truthfulness of the statements made in the article. Their brief states:
"It is no answer to say in this case as did the district judge, that the plaintiff's shoulder the burden of proving that they can show that the statements were false and that they were made with either knowledge of falsity or reckless disregard thereof."
We do not agree. In Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986), the United States Supreme Court held that the First Amendment of the U.S. Constitution requires that a plaintiff who is a private figure and who seeks damages for public concern speech claimed to be defamatory has the burden of proving falsity (and fault) in order to recover damages. It is obvious that the plaintiffs in our case are private figures and the article involved dealt with a matter of public concern (wife beating). Therefore, the requirements of Hepps are applicable and the plaintiffs would have the burden of proving falsity.
The plaintiffs further assert that the simple fact that they allege that the statements are false while the defendants claim the statements are true is sufficient to create an issue of material fact and thus should negate any claim to a summary judgment. The use of a summary judgment is designed to dispose of frivolous demands and defenses. It is appropriate only when there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Schaefer v. Lynch, 406 So.2d 185 (La.1981). The standards used for considering a motion for summary judgment are somewhat higher in defamation suits. In the case of Dwight W. Andrus Insurance, Inc. v. Abellor Corp., 482 So.2d 1092, 1093 (La.App. 3d Cir.), writ denied, 486 So.2d 733 (La.1986), a summary judgment was granted by the appellate court (after being denied by the trial court) in a defamation suit brought against a television station. The court discussed the use of summary judgments in defamation suits:
"In cases affecting the exercise of First Amendment liberties, proper summary judgment practice is essential. Summary judgment adjudication is a tool for avoiding the unnecessary harassment of defendants by unmeritorius actions which threaten the free exercise of the rights of speech `in' or `by' the press. Mashburn v. Collin, 355 So.2d 879 (La. 1977). For these reasons, the plaintiff in a defamation action who opposes summary judgment bears a burden of proof which is more onerous than usual. Among other things, the plaintiff-opponent must show that he can produce sufficient evidence at trial to prove with convincing clarity that the statements made were false. Cavalier v. Houma Courier Newspaper, 472 So.2d 274 (La. App. 1st Cir.1985)."
In attempting to meet this "more onerous" burden of presenting sufficient evidence to prove falsity with convincing clarity, the plaintiffs simply rely on their own assertions that what was said was not true. It is questionable if only this assertion is sufficient *809 to meet the burden. But even assuming, arguendo, that their claims of falsity are valid, the plaintiffs' defamation claim fails on the issue of malice.
The final prong that a plaintiff is required to meet in a defamation claim is proof of malice. The plaintiffs in this matter claim that the statements made in the newspaper article are words that impute a crime to another and thus are defamatory per se and no proof of malice is required. Rennier v. State Through Dept. of Public Safety, 428 So.2d 1261 (La.App. 3d Cir. 1983); Cangelosi, 390 So.2d at 198. However, in determining whether such words are defamatory, a court must look not only to the words themselves, but also to the context and the circumstances in which the words were used. Becnel v. Boudreaux, 340 So.2d 687 (La.App. 4th Cir.), writ denied, 342 So.2d 671 (La.1977); Foote v. Sarafyan, 432 So.2d 877 (La.App. 4th Cir. 1982), writ denied, 440 So.2d 736 (La.1983). Plaintiffs here assert that the newspaper article accuses them of committing among other things, kidnapping, murder, theft, and battery. However, none of these allegations by the plaintiffs are direct accusations made in the newspaper article. These statements are simply statements made by the wife, "Gloria," as to the problems that she has suffered and relayed by the reporter in the article.[4] When read in the context of the article, these statements cannot be regarded as accusations of crimes, but are simply the recounting of statements made by the subject being interviewed of the problems that she has faced. The intent of these statements, as stated in the preface preceeding the article, was to give an abused wife's side of the story. The statements made in the article are thus not defamatory per se and the plaintiffs are required to prove malice.
In order to show malice, plaintiffs must prove that the statements made in the article were published with knowledge that the statements were false or with reckless disregard for whether the statements were true or false. When a defendant files a motion for summary judgment, the plaintiff must show with convincing clarity facts which support the plaintiff's claim of malice.[5]Batson v. Time, Inc., 298 So.2d 100, 102 (La.App. 1st Cir.), writ denied, 299 So.2d 803 (La.1974). The goal of such a rule is to prevent unfounded lawsuits from having a "chilling effect" upon First Amendment freedoms. Id. at 103. Plaintiffs contend that the reporter in this case was guilty of malice. In their brief they state:
"Had she done the slightest bit of investigation, she would have reached the conclusion that what she was about to print was contradicted by the available evidence surrounding the matter. She had the time to do so, but didn't do it, and was therefore, guilty of malice either knowingly and/or in reckless disregard of the truth of the matter."
We do not agree with this contention. It is apparent that the reporter here was simply relating facts as told by "Gloria" with no reason to question their truthfulness. The article involved here was not intended to further any allegations against the plaintiffs, but was instead meant to simply document the problems of a battered wife as seen through the eyes of such a person. The reporter here did not have any apparent reason to doubt the validity of the *810 statements given to her by "Gloria."[6] We therefore, conclude that plaintiffs have not shown with convincing clarity facts to justify the conclusion of malice by the defendants.
Plaintiffs thus were not able to meet their proper burden of proof as to malice to defeat a motion for summary judgment and the trial court correctly granted defendants' motion for summary judgment on the plaintiffs' claim of defamation.

INVASION OF PRIVACY
Plaintiffs claim that even if the requirements of a defamation suit are not met, defendants should be liable for invasion of privacy. They claim that there is a genuine issue of material fact as to the privacy claim and thus the trial court should not have granted defendants' motion for summary judgment.
Louisiana courts have allowed tort actions for invasion of privacy which involves the basic right of a person to be let alone in his private affairs. An unwarranted invasion of a person's right of privacy may give rise to liability for the resulting harm. The determination of whether a person's conduct constitutes the tort of invasion of privacy depends on the facts and circumstances of each case. Roshto v. Hebert, 439 So.2d 428, 430 (La.1983). There are four different types of actions that may fall under an invasion of privacy claim: (1) the appropriation of an individual's name or likeness, for the use or benefit of the defendant; (2) an unreasonable intrusion by the defendant upon the plaintiff's physical solitude or seclusion; (3) publicity that unreasonably places the plaintiff in a false light before the public; and (4) unreasonable public disclosure of embarrassing private facts. Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386, 1388 (La.1979).
Louisiana courts have also distinguished actionable from non-actionable invasions. To be actionable, a defendant's conduct must be unreasonable and must seriously interfere with the plaintiff's privacy interest. It is not necessary to prove that the defendant acted with malicious intent. The reasonableness of the defendant's acts is determined by balancing the interests of the plaintiff in protecting his privacy from serious invasions with the defendant's interest in pursuing his course of conduct. Id. at 1389. Where the defendant's action is properly authorized or justified by circumstances, it is deemed to be reasonable and non-actionable, even though it admits to a slight invasion of the plaintiffs' privacy. Carvajal v. Levy, 485 So.2d 586, 588 (La.App. 4th Cir.1986), citing Parish National Bank v. Lane, 397 So.2d 1282 (La. 1981). The right of privacy is also limited by society's right to be informed about legitimate subjects of public interests. Parish National Bank, 397 So.2d at 1286.
The trial court determined that there was no genuine issue of material fact as to plaintiffs' claim of invasion of privacy and thus granted defendant's motion for summary judgment. We agree. In viewing the facts as presented by the record it is apparent that the plaintiffs have not adequately set out facts that would support their claim. It appears that when the totality of the circumstances present in this case are considered, the defendants' actions in writing the story were not unreasonable. The newspaper reporter made efforts, although less than exemplary, to cover up the identities of the subjects of the article *811 about wife beating.[7] The intention of the article was not to invade the privacy of the plaintiffs but rather to report on matters of legitimate public concern of which society has a legitimate interest in being informed. There was no intent by the newspaper to make the plaintiffs identifiable from the facts set forth in the article.[8] We therefore hold that the trial court correctly granted defendants' motion for summary judgment as to the invasion of privacy claim.

STIPULATION POUR AUTRUI
The plaintiffs contend that a contract was entered into between the newspaper reporter and Gwendolyn Spears in which it was agreed that her identity would remain anonymous. They further argue that such an agreement was intended as a stipulation pour autrui to benefit Richard Spears and Bessie Barton by also protecting their identities. The plaintiffs claim that even though Gwendolyn Spears intended to reveal the facts of the allegedly severe beatings she received by her husband, she also intended to protect his identity (and his mother's), because if his identity was known, then her identity would also become apparent. The defendants, on the other hand, dispute that any such written agreement to keep Gwendolyn Spears' identity confidential was entered into and claim that the only type of agreement would have been oral and would not have been for the benefit of either of the plaintiffs.
The trial court summarily dismissed the claim of breach of a stipulation pour autrui. It was noted that the plaintiffs did not produce any evidence that such a written agreement existed.[9] As stated in Fontenot v. Marquette Casualty Co., 258 La. 671, 247 So.2d 572, 579 (1971): "In Louisiana contracts for the benefit of others, or the stipulation pour autrui, must be in writing and clearly express that intent." Plaintiffs produced no evidence of any such written agreement being made. They, however, argue that it should not be their burden in an opposition to a motion for summary judgment to prove the existence of such a written agreement, rather they claim that it is the burden of the defendant to prove the nonexistence of a written stipulation pour autrui in order to prevail in the motion for summary judgment. We do not agree with this assertion. If an agreement was put into writing to provide a benefit for the plaintiffs, ample time and channels *812 were available to them through discovery to produce some evidence of the agreement yet no such evidence is in the record. The trial court further reasoned that even if there were such a written agreement, it was not plausible that it would have the intention of benefiting the plaintiffs.[10] Plaintiffs argue that such a conclusion by the trial court as to what the intention of the parties in this alleged agreement was is unwarranted based upon the fact that the agreement was not in the court records. We believe that the simple fact that no evidence of a written stipulation pour autrui was produced is sufficient to sustain a motion for summary judgment for breach of that agreement. But, as stated by the trial court, even if there were an agreement and it said what the plaintiffs contend it does, to hold that an agreement between Gwen Spears and the newspaper reporter to protect her identity was intended to benefit her ex-husband and his mother (the persons whom she claims caused her problems) "would lend a meaning to the stipulation pour autrui which goes far beyond its intended purpose." The fact that a third party may incidentally derive a benefit from a contract does not necessarily create a stipulation pour autrui. State Farm Fire and Casualty v. Williams, 486 So.2d 849, 851 (La.App. 1st Cir.1986). We, therefore, agree with the trial court's grant of a motion for summary judgment on the plaintiff's claim of breach of a stipulation pour autrui.
Subsequent to the trial court's decision, defendants filed peremptory exceptions of no cause of action and no right of action with the court on the issue of breach of a stipulation pour autrui. Since we rule in defendants' favor on the motions for summary judgment on this issue, it is unnecessary to rule upon this exception.
For the above reasons, the judgment of the trial court in granting defendants' motion for summary judgment on the issues of defamation, invasion of privacy, and breach of a stipulation pour autrui are affirmed. Costs are taxed to plaintiff, Richard A. Spears.
AFFIRMED.
NOTES
[1] Mrs. Barton's suit, La.Judicial Dist. # 9 docket #132027, was consolidated with this suit at trial. The suits remain consolidated on appeal; however, a separate judgment will be rendered entitled Bessie Barton v. McCormick & Co., ___ So. 2d ____ (La.App. 3d Cir.1987) rendered on this date.
[2] Although the statements made by the paper would probably cause an identifiable subject to be "shunned" or "ridiculed" as stated in Deville, there is nothing here to indicate that the "effect the article was fairly calculated to produce" was anything more than to increase public awareness of the problems of battered wives.
[3] Plaintiffs urge that the reporter's attempt to conceal their identities was inadequate. They claim that by giving the ages of the husband and wife, the fact that he was employed in the Persian Gulf, the number of children they had, etc., the plaintiffs were effectively identifiable even though their actual names were disguised. While it appears that the identities of the plaintiffs could have been more skillfully disguised by the reporter in this instance, "simple ineptitude and lack of skill do not obviate First Amendment protection as a matter of law." Shylock, Inc. v. Covenant Broadcasting Corp. of La., 352 So.2d 379, 383 (La.App. 4th Cir.1977), writ denied, 354 So.2d 206 (La.1978). Weatherall v. Dept. of Health & Human Resources, 432 So.2d 988, 994 (La.App. 1st Cir.), writ denied, 437 So.2d 1150 (La.1983), also states this proposition and further says:

"Louisiana courts recognize the principle that the defamatory words must refer to some ascertainable person, and that person must be the plaintiff. If the words used really contain no reflection on any particular individual, no averment or innuendo can make them defamatory. An innuendo cannot make the person certain who was uncertain before." (citations omitted)
[4] As to kidnapping the article states: "Ron bragged how he and his mother had kidnapped the children from his ex-wife." And later in the article "During one separation, the two children Ron kidnapped from the former wife were sent back to their mother."

The apparent murder allegation states: "Two months after the birth of Ron and Gloria's second child together, she was pregnant again. Four months later she was in the hospital suffering a miscarriage prompted by yet another beating."
As to being a thief, the article says: "Once, he took her car and kept it for months."
As to battery, there are several instances in which the wife tells of her husband beating her.
[5] Thus even if a plaintiff can show falsity with clear and convincing clarity, he will also have to show facts that support knowledge of that falsity or reckless disregard for the truth (malice) with convincing clarity in order to defeat a motion for summary judgment.
[6] In Kidder v. Anderson, 354 So.2d 1306 (La. 1978), cert. denied, 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978), the Louisiana Supreme Court dismissed a suit in which the plaintiff had been awarded damages for defamation at both the trial and appellate court levels. The plaintiffs contended that information used in a newspaper report (about alleged improprieties by the police chief) was not reliable information because the informants (police officers) were biased. The court said that the criterion for determining the reliability of information gathered from the informants is "whether or not they were in a position to obtain the information furnished by them, and whether or not the report they conveyed was so inherently improbable as to create indisputable doubt as to its authenticity." Id. at 1309 (citation omitted). The court said that the information was gotten from parties in the apparent position to know of the factual accuracy of the statements and there was no reason for the reporter to doubt the truthfulness of the information.
[7] In Roshto v. Hebert, 439 So.2d 428, 432 (La. 1983), which involved the reprinting of newspaper stories from prior years (one of which was of criminal charges against the plaintiffs for which they were later pardoned), the court stated:

"Defendants were arguably insensitive or careless in reproducing a former front page for publication without checking for information that might be currently offensive to some members of the community. However, more than insensitivity or simple carelessness is required for the imposition of liability for damages when the publication is truthful, accurate and non-malicious. Plaintiffs in the present case simply did not establish additional factors and circumstances to warrant the imposition of damages."
[8] In Roshto, 439 So.2d at 431, the court said:

"No one deliberately pointed the finger of blame at plaintiffs. There was no attempt to highlight the matter or to relate plaintiffs' past history to their present life and place of residence. There was also no suggestion of intentional behavior or malice on the part of the editor ..."
[9] LSA-C.C. Art. 1978 provides:

"A contracting party may stipulate a benefit for a third person called a third party beneficiary.
Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement."
The code article does not mention a requirement of a writing. However, as stated in Hertz Equipment Rental Corp. v. Homer Knost Construction Co. Inc., 273 So.2d 685, 688 (La.App. 1st Cir.1973):
"The jurisprudence requires that such a provision for the benefit of third persons be in writing and clearly manifest an intention to confer a benefit upon a third party. In Fontenot v. Marquette Casualty Co., 258 La. 671, 247 So.2d 572, the court said:
'Courts should not and cannot by implication extend or restrict a contract to mean something different than intended by the parties.'"
See also Guillory v. Morein, 468 So.2d 1254, 1258 (La.App. 3d Cir.1985) and Camellia Place Subdivision-Block 1 v. Willet, 491 So.2d 764, 767 (La.App. 3d Cir.), writ denied, 496 So.2d 349 (La.1986).
[10] A further requirement of a stipulation pour autrui is that there be a clear intent by the parties to confer a benefit upon a third party. In Arrow Trucking Co. v. Continental Insurance Co., 465 So.2d 691, 698 (La.1985), the court said:

"It is well settled that for a person to successfully maintain an action under a contract to which it is not a party the contract must clearly express the contracting parties' intent to stipulate some advantage for that (third) person." (citations omitted)