United States Court of Appeals,

Fifth Circuit.

No. 91-6070.

Charles E. Gene SMITH and Joan Smith, et al., Plaintiffs-Appellants,

v.

AMERICA WEST AIRLINES, INC. and Connie Lynn Weaver, Defendants-Appellees.

Feb. 15, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART and PARKER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This appeal presents the question whether 49 U.S.C.App. § 1305(a)(1), the express preemption section of the Airline Deregulation Act of 1978, preempts a state law claim for negligence and gross negligence relating to the airline's alleged failure to prevent a would-be hijacker from boarding an airplane as a passenger. The district court, relying on our then-binding precedent, held that the plaintiffs' causes of action were preempted and dismissed the complaint. Our analysis of the preemptive scope of § 1305(a)(1) has significantly changed in the companion en banc case *Hodges v. Delta Airlines, Inc.,* No. 91-6037, --- F.3d ---- (5th Cir.1995), decided today. Reviewing this case in light of *Hodges,* we reverse the dismissal.

## I. *BACKGROUND*

On January 16, 1990, America West flight 727 was hijacked en

route to Las Vegas from Houston. The hijacker forced the pilot to land the aircraft in Austin, Texas, so that it could be refueled and flown to Cuba. At the Austin airport, police overpowered the hijacker and placed him under arrest.

Passengers on the airplane brought a lawsuit in state court against America West and Connie Lynn Weaver claiming that the defendants were negligent in permitting the hijacker to board the aircraft. The defendants removed the action to federal court and promptly moved to dismiss on the ground that the plaintiffs' state law tort claims were preempted by the Airline Deregulation Act of 1978 (ADA), 49 U.S.C.App. § 1301 *et seq.,* and that no implied cause of action existed under the Federal Aviation Act. The district court granted the defendants' motion and dismissed the complaint. The plaintiffs appeal.[1]

The petition here alleges several acts or omissions of negligence and gross negligence by America West and Weaver. These allegations generally accuse the airline and its local supervisor of failing to warn or protect ticketed passengers against hazards which were known or should have been known to them by allowing Jose

---

[1]The Smiths preliminarily contend that the federal court lacked removal jurisdiction over this case, in which no federal claim or cause of action appeared on the face of the well-pleaded complaint and in which both they and the America West supervisor were Texas citizens for diversity purposes. If those were the only salient facts relevant to diversity jurisdiction, appellants might well be correct. Appellants omit to state, however, that America West entered Chapter 11 bankruptcy protection three weeks after the case was removed to federal court, and America West shortly afterward filed a notice of supplemental removal based on 28 U.S.C. § 1452 and Bankruptcy Rule 9027. Appellants have never contested this fully defensible basis of federal jurisdiction.

Manuel Gonzales-Gonzales to board Flight 727 at Houston Intercontinental Airport. The plaintiffs allege that America West and Weaver negligently failed to use boarding practices stringent enough to prevent Gonzales-Gonzales from boarding the aircraft, failed to train their employees and failed to warn the passengers, as a result of which they were endangered and injured.

## II. *DISCUSSION*

In *Hodges,* this court analyzed congressional intent in preempting any state law, rule, regulation standard or other provision "relating to rates, routes or services" of any air carrier. Construing this language in light of pre-existing statutory usage, the interpretation of regulatory agencies that had or have jurisdiction over the airline industry, and the intent of the ADA, this court concluded that "services" include:

> Elements of the air carrier service bargain ... items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself.

*Hodges,* --- F.3d at ----. This court also reiterated its holding in *O'Carroll v. American Airlines, Inc.,* 863 F.2d 11 (5th Cir.), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989), in which a passenger's suit for wrongful eviction from a flight because of his alleged intoxication was held preempted by § 1305(a)(1).

America West asserts that this case, a suit for wrongful boarding of a passenger who should have been evicted, is the converse of *O'Carroll.* In each case, America West contends, enforcement of state law claims against the carrier would "result

3

in significant *de facto* regulation of the airlines' boarding practices ..." *Hodges,* --- F.3d at ----. Consequently, the claims asserted here by appellants are "related to" the airline's services and would have the "forbidden significant effect" that compels § 1305(a)(1) preemption. *Morales v. Trans World Airlines, Inc.,* --- U.S. ----, ----, 112 S.Ct. 2031, 2039, 119 L.Ed.2d 157 (1992).

Appellants construe *O'Carroll* as more narrowly focusing on the airline's economic regulations, while the instant case, by contrast, seeks redress for the airline's failure to insure the safety of its passengers. *See Margolis v. United Airlines, Inc.,* 811 F.Supp. 318, 321 (E.D.Mich.1993). Appellants contend that lawsuits for negligent rendition of services are not preempted by § 1305(a)(1).

Applying the *Hodges* framework, it first appears that the scope of § 1305(a)(1) preemption will not be affected by 49 U.S.C.App. § 1371(q), which requires airlines to carry insurance to cover personal injury arising out of the operation or maintenance of aircraft. Neither the alleged failure of America West's ticket agent to perceive that the hijacker was deranged when she sold him a ticket nor appellants' other allegations of negligence are part of the operation or maintenance of aircraft.

Appellants' claims are thus preempted only if they "relate to" "services" within the scope of § 1305(a)(1). We conclude that they do not relate to preempted services and that this case is not simply the converse of *O'Carroll.* As explained in *Hodges,* § 1305(a)(1) assured the economic deregulation of the airlines by

4

rendering them immune from rate and service regulation by the states after the demise of federal regulation. Neither the language nor history of the ADA implies that Congress was attempting to displace state personal injury tort law concerning the safety of the airline business. The Supreme Court counsels that courts should not lightly infer in federal actions an attempt to preempt traditional state police powers. *California v. ARC America Corp.,* 490 U.S. 93, 102, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989). Under these circumstances, it is reasonable to interpret the "service" of boarding to be limited to economic decisions concerning boarding, e.g., overbooking or charter arrangements, and contractual decisions whether to board particular ticketed passengers.

Consistent with this line of reasoning, O'Carroll's claim was preempted under § 1305(a)(1). His suit for wrongful eviction from a flight involved an alleged breach of the airline's duty to transport the plaintiff. If O'Carroll's judgment had remained intact, it would interfere with the economic deregulation of airline services by imposing a state-law-based duty to transport ticketed passengers.

The Smiths' claim issues from a different perspective that has nothing to do either with the airlines' economic practices regarding boarding or with the boarding practices that America West applied to the Smith appellants. Instead, the Smiths' claim is that the safety of their flight was jeopardized by the airline's permitting a visibly deranged man to board. If appellants

5

ultimately recover damages, the judgment could affect the airline's ticket selling, training or security practices, but it would not regulate the economic or contractual aspects of boarding. Any such effect would be "too tenuous, remote or peripheral" to be preempted by § 1305(a)(1). *Morales,* --- U.S. at ----, 112 S.Ct. at 2040 (quoting *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)).

As this discussion intimates, we hold that the Smiths' claim is not preempted, but we do not accept the broadest version of their argument, which is that a claim for the negligent rendition of services by an air carrier is not preempted. This argument was rejected in *Morales,* which held that state laws of general applicability are preempted whenever they "relate to" the subject of federal legislation. --- U.S. at ----, 112 S.Ct. at 2038. The real question, is the scope of "services" that were deregulated: those services include boarding practices in their economic or contractual dimension but not insofar as the safety of the flight is involved.[2]

For these reasons, the Smiths' claims are not preempted by § 1305(a)(1), and the case is *REVERSED* and *REMANDED* for further proceedings.

E. GRADY JOLLY, Circuit Judge, specially concurring:

In this case, the majority modifies its interpretation of the

---

[2]As in *Hodges,* we do not decide whether Federal Aviation Administration safety regulations may exert some preemptive effect over the Smith appellants' claims. *See Hodges,* --- F.3d - ---, n. 13.

ADA preemption provision announced today in *Hodges v. Delta Airlines* to differentiate further between the economic aspects and the safety aspects of a service. I do not think this distinction is defensible in the light of *American Airlines v. Wolens,* 1995 WL 15047, --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ----. *American Airlines* determined that the term "service" in the preemption provision includes *all* services, both essential and unessential. *Id.* at *5, --- U.S. at ----, --- S.Ct. at ----. Given that fact, it is likely that the Supreme Court would view the term "service" as encompassing claims relating to the safety as well as the economic or contractual aspects of a service. Nonetheless, for the reasons stated in my special concurring opinion in *Hodges,* I concur in the judgment of the court.

PATRICK E. HIGGINBOTHAM, Circuit Judge with whom EMILIO M. GARZA, Circuit Judge, joins dissenting:

In *Hodges v. Delta Airlines, Inc.,* --- F.3d ----, ---- (5th Cir.1995) (en banc), I explained that I would test the preemptive reach of § 1305(a)(1) of the Airline Deregulation Act of 1978 as follows:

> The first inquiry is whether the claim, with regulatory effect, relates to "rates, routes or services." 49 U.S.C.App. § 1305(a)(1). If the claim relates to services, then it is preempted unless it also results from "the operation or maintenance of aircraft." *Id.* § 1371(q)(1). If there is doubt as to whether the claim results from the operation or maintenance of the aircraft, that doubt is to be resolved in favor of the operation or maintenance category.

I am persuaded that the Smiths' claim is preempted. A claim alleging that an airline negligently failed to prevent a visibly deranged passenger, holding an otherwise valid ticket, from

7

boarding the aircraft relates to boarding procedures, which are inextricably part of providing air travel services. The next inquiry then is whether this claim results from the operation or maintenance of the aircraft. As the majority indicates, "[n]either the alleged failure of America West's ticket agent to perceive that the hijacker was deranged when she sold him a ticket nor appellants' other allegations of negligence are part of the operation or maintenance of aircraft." For me, the analysis ends there, and the correct result is that the Smiths' claim relates to services and, therefore, is preempted.

The majority suggests that affecting an airline's ticket selling, training, or security practices is "too tenuous, remote or peripheral" to be preempted by § 1305(a)(1) and has nothing to do with the economic practices regarding boarding. This does not comport with the plain meaning of the term services, and I am not persuaded of the relevance or force of the proffered economic analysis. The regulatory bite of tort laws is direct. I cannot find in the words of the statute a wholesale exception for claims of personal injury nor any exception for tort claims with a contract in the background. The state is enforcing its own standards, policies, and duties, not the obligations of private contract—just as surely as Illinois was regulating an airline service by applying its rules against fraudulent acts to a frequent flier mile program. *See American Airlines, Inc. v. Wolens,* No. 93-1286, 1995 WL 15047, --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ---- (U.S. Jan. 18, 1995).

8

I would affirm.