**Dean STONE and Carol Stone, Plaintiffs,**

v.

**CONTINENTAL AIRLINES, INC., a Delaware corporation; John Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10, Defendants.**

Civ. No. 95–00370 DAE.

United States District Court,
D. Hawai'i.

Nov. 21, 1995.

Alexander Tait MacLaren, Chuck Jones and MacLaren, Honolulu, HI, for Dean Stone, Carol Stone.

John R. Lacy, Lisa A. Bail, Goodsill Anderson Quinn & Stifel, Honolulu, HI, for Continental Airlines, Inc.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

DAVID ALAN EZRA, District Judge.

The court heard Defendant's Motion to Dismiss on November 20, 1995. Alexander Tait MacLaren, Esq., appeared on the briefs or at the hearing on behalf of Plaintiffs Dean Stone and Carol Stone (collectively "Plaintiffs"); John Lacy, Esq., and Lisa Bail, Esq., appeared on the briefs or at the hearing on behalf of Defendant Continental Airlines ("Defendant"). After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Defendant's Motion to Dismiss.

## BACKGROUND

This case arises out of an alleged assault on board Continental Flight 001 from Los Angeles to Honolulu and continuing on to Australia on January 26, 1993. Plaintiffs were first-class passengers on that flight. Plaintiff Dean Stone alleges that en route to Honolulu, he was punched without provocation by another passenger ("John Doe 1").

1. Plaintiffs are citizens of Australia. Defendant is a Delaware corporation with its principal place of business in Texas. Under 28 U.S.C. § 1332, a case may properly be removed where

Plaintiffs filed a complaint in state court on January, 25 1995 asserting five claims: (1) assault and battery; (2) breach of duty of reasonable care; (3) breach of implied warranty; (4) relief under the Warsaw Convention of 1934; and (5) punitive damages. Defendant removed the case to federal court on May 17, 1995 on diversity grounds.[1] Defendant now moves to dismiss this case on two grounds: (1) Plaintiffs' state law claims are preempted by the Airlines Deregulation Act ("ADA"), and (2) Plaintiffs' complaint fails to state a cognizable claim under the Warsaw Convention.

## STANDARD OF REVIEW

 A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992) (quoting *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989) (further citations omitted)). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Id.*

## DISCUSSION

I. Counts I–III

Preemption By the Airlines Deregulation Act (ADA)

Defendant contends that Plaintiffs' claims for assault and battery (Count I), breach of duty of reasonable care (Count II), and breach of implied warranty (Count III) are related to airline "services," and thereby preempted by the ADA.

The ADA provides that:

[A] State, political subdivision of a state, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect

there is diversity of citizenship and an amount in controversy exceeding $50,000. Here, the court has proper diversity jurisdiction.

of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C.A. § 41713(b) (West 1995). The Ninth Circuit has adopted a broad definition of "services" under this statute. *Harris v. American Airlines, Inc.,* 55 F.3d 1472, 1476 (9th Cir.1995) (Serving a passenger alcoholic beverages and failing to exercise any control to protect plaintiff from outrageous and discriminatory insults is conduct relating to "service" under the ADA); *Costa v. American Airlines,* 892 F.Supp. 237, 239 (C.D.Cal. 1995) (The court held that the following are "services" for the purposes of the ADA: (1) failure of the flight attendants to prevent an unidentified passenger from opening an overhead bin and causing a bag to fall on plaintiff as she sat in an aisle seat, (2) failure of the flight attendants to identify the other passenger, (3) American's routine destruction of the passenger list shortly after the flight, and (4) the airline's refusal to honor Costa's request for a window seat). Generally, "services" include two types of acts or omissions: one is based on the contractual relationship[2] between the airline and the passenger and the other is related to the airline's regulative control over passengers. *See Costa,* 892 F.Supp. at 239.

Plaintiffs urge the court to employ the more narrow definition of services set forth in two recent Fifth Circuit cases, *Smith* and *Hodges.* Plaintiffs argue that the ADA only precludes claims that interfere with the economic deregulation of airline services, not personal injury tort or contract claims.[3] The court is not persuaded to adopt Fifth Circuit

law; neither *Smith* nor *Hodges* is binding here. "District courts are, of course, bound by the law of their own circuit, and are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be." *Gee v. Southwest Airlines Co.,* 1995 WL 652463, *3 (N.D.Cal.1995) (quoting *Zuniga v. United Can Co.,* 812 F.2d 443, 450 (9th Cir.1987)). Instead, the court finds the Ninth Circuit's decision in *Harris* controlling.[4]

In *Harris,* the court preempted a passenger's claims against the airlines where the flight attendant continued to serve a boisterous passenger drinks and failed to restrain him from using outrageous and discriminatory insults that offended the plaintiff ("Harris"). 55 F.3d at 1476. In that case, Harris was a first-class passenger who argued that she had paid the high price first class fare to receive "first class service and first class protection." *Id.* Harris also contended that the flight attendants' omission to act was a breach of established airline procedure.[5] The Ninth Circuit concluded that the conduct of the flight crew relates to "services" under the ADA. *Id.*

Taking all allegations of material facts as true, the factual distinctions between *Harris* and the instant case are not significant enough to distinguish the holding. As in *Harris,* Plaintiffs paid first-class fare for the privileges and benefits of sitting in the first-class compartment. Also similar to *Harris,* Plaintiffs contend that the flight attendants failed to take reasonable precautions to control a disorderly, intoxicated and potentially

---

2. " 'Services' generally represent a bargained-for or anticipated provision of labor from one party to another." *Costa,* 892 F.Supp. at 238–39 (quoting *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334 (5th Cir.1995)). The Ninth Circuit adopts the Fifth Circuit *Hodges* definition as only one type of "service" under the ADA. The *Costa* court adamantly rejected any suggestions that *Hodges* was comprehensive on the definition of services.

3. Plaintiffs note that the Fifth Circuit expressly held, "neither the language nor the history of the ADA implies that Congress was attempting to displace state personal injury tort law concerning the safety of airline business." *Smith v. America West Airlines, Inc.,* 44 F.3d 344, 346 (5th Cir.1995).

4. Also, Defendant correctly points out the *Hodges* and *Smith* decision preceded *Harris.* It is significant here that those decisions were available when the Ninth Circuit decided *Harris.* The Ninth Circuit could have followed the holding in *Hodges,* but did not.

5. Harris cited the deposition of a flight attendant which indicated that American Airlines' procedure to deal with passenger misconduct is first to approach the passenger, and then to notify the cockpit if the problem persists. More extreme measures include having the authorities meet the plane at the gate and making an unscheduled landing to have the passenger removed. *Harris,* 55 F.3d at 1476.

violent passenger. Plaintiffs' Complaint, ¶¶ 12, 14, 16. Plaintiffs also allege that Defendant facilitated the attack by permitting John Doe 1, who had not paid for first-class service to enter the first-class compartment of Flight 001. Plaintiffs' Complaint, ¶ 13. In addition, Plaintiffs seem to claim that Defendant was negligent in not divulging John Doe 1's name. Plaintiffs' Complaint, ¶¶ 4, 8.

■ The above claims of negligence and breach of duty of care directly pertain to Continental's treatment of its passengers.[6] The court therefore finds that these allegations fall squarely within the Ninth Circuit's broad interpretation of "services" under the ADA. *See Costa,* 892 F.Supp. at 238. For these reasons, the court finds that Plaintiffs' tort claims (for assault and battery and for breach of duty of reasonable care) are preempted by the ADA and hereby DISMISSES Counts I and II of Plaintiffs' Complaint.

There remains a question, however, whether the ADA preempts Count III of Plaintiffs' complaint (implied breach of warranty). Plaintiffs claim that Defendant breached its contract and implied warranties to provide Plaintiffs a safe and secure premise for the airline flight. Contract claims are not wholly preempted by the ADA. In *American Airlines, Inc. v. Wolens,* — U.S. ——, ——, 115 S.Ct. 817, 824, 130 L.Ed.2d 715 (1995), the Supreme Court stated, "We do not read the ADA's preemption clause [ ] to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own imposed undertakings." *See also Harris,* 55 F.3d at 1475–76. This exception, however, is narrow and limited to the terms bargained for by the parties. The ADA still preempts any state law or public policy claims disguised as contract claims. "This distinction between what the State dictates and what the airline itself undertakes con-

fines courts, in breach of contract actions, to the parties bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens,* — U.S. at ——, 115 S.Ct. at 826.

■ Plaintiffs' claim does not fit within the limited exception carved out in *Wolens.* The court must look at the substance, rather than the form of Plaintiffs' claim. *See Nottingham v. United States,* 741 F.Supp. 1445, 1446 (C.D.Cal.1989); *LaPlant v. United States,* 872 F.2d 881, 883 (9th Cir.1989). Here Plaintiffs' breach of implied warranty is based on the same facts and allegations underlying their tort actions. To allow Plaintiffs to recharacterize their tort action as a quasi-contractual claim for breach of implied warranty would subvert the purposes of the ADA. For this reason, the court finds that Plaintiffs' breach of implied warranty claim is preempted by the ADA and hereby DISMISSES Count III of Plaintiffs' Complaint.

## II. Count IIIA and the Warsaw Convention

Defendant contends that Plaintiffs fail to state a claim under the Warsaw Convention because they do not properly allege that an "accident" was the proximate cause of their injury. The parties agree that the Warsaw Convention governs Count IIIA.[7]

■ Specifically, Article 17 of the Warsaw Convention provides:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or an other bodily injury suffered by a passenger if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of operations of embarking or disembarking.

Warsaw Convention, October 12, 1929, 49 Stat. 3000 (1934), TS No. 876, 137 LNTS 11. To recover under the Warsaw Convention,

---

**6.** In *Harris,* the Ninth Circuit found that Harris' claims were preempted by the ADA because "they pertain directly to how airlines treat passengers who are loud, boisterous, and intoxicated." 55 F.3d at 1476.

**7.** Plaintiffs' Complaint groups paragraphs 15 and 16 and paragraphs 17 and 18 under two separate

headings both of which are labeled Count III. Defendant refers to Plaintiffs' claim for breach of implied warranty in paragraphs 15 and 16 of the Complaint as "Count III" and refers to Plaintiffs' claims for relief under the Warsaw Convention as alleged in paragraphs 17 and 18 of the Complaint as "Count IIIA." For simplicity's sake, the court will do the same.

Plaintiffs must prove that an "accident" within the meaning of Article 17 occurred on the aircraft. The Convention itself does not define the term "accident." This court relies on the definition articulated by the Supreme Court in *Air France v. Saks*, which states that "liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." 470 U.S. 392, 405, 105 S.Ct. 1338, 1345, 84 L.Ed.2d 289 (1985). While that definition is to be "flexibly applied after assessment of all the circumstances surrounding a passenger's injuries," *id.*, the alleged accident must bear some relation to the defendant's operation of the aircraft. *See Price v. British Airways*, 1992 WL 170679, *2 (S.D.N.Y.1992) (incident involving one passenger punching another does not constitute an "accident" under the Warsaw Convention because it "bears no relation to [d]efendant's operation of the aircraft").

Defendant argues that it is not liable under the terms of the Warsaw Convention because the incident had no correlation with the operation of the aircraft and was therefore not an "accident" within the meaning of the Warsaw Convention. In contrast, Plaintiffs claim that Defendant facilitated and/or participated in the incident by allowing John Doe 1 to enter the First Class compartment without a proper ticket and failing to warn them. Plaintiffs' Complaint, ¶ 13. Plaintiffs argue that the contradictory evidence on this issue and the flexibility in assessing what constitutes an accident under the Warsaw Convention makes this a prime question for the trier of fact. *Air France*, 470 U.S. at 405, 105 S.Ct. at 1345. The court disagrees with Plaintiffs.

The fundamental premise in authorizing carrier liability under the Warsaw Convention "is to include such risks that are characteristic of air travel." *Price*, 1992 WL 170679 at *3. Here, Plaintiffs' claims would expand the scope of liability under Article 17 of the Warsaw Convention.[8] Plaintiffs' misfortune allegedly occurred on the airplane, but was not an accident derived from air travel.[9] The court therefore finds Plaintiffs' claim to be outside the scope of the Warsaw Convention and hereby DISMISSES Count IIIA.

## CONCLUSION

For the reasons stated above, the court GRANTS Defendant's Motion to Dismiss on all counts[10] as they relate to Continental. The court, however, will REMAND the remaining DOE allegations to state court for further adjudication on the merits.

IT IS SO ORDERED.

---

**8.** "To suggest that a fistfight between two passengers is a characteristic risk of air travel is absurd. Such a fracas is not a characteristic risk of air travel nor may carriers easily guard against such a risk through the employment of protective security measures." *Price*, 1992 WL 170679 at *3.

**9.** According to the Supreme Court in *Air France*, this is plainly what the Convention drafters sought to avoid. In interpreting the records of the Convention negotiations, the Court noted: "A passenger's injury must be caused by an accident, and an accident must mean something different than an 'occurrence' on the plane." *Air France*, 470 U.S. at 403, 105 S.Ct. at 1344. The more general term "occurrence," by contrast, was intended to define the events that would establish liability for damage to baggage under Article 18. *Id.* at 402, 105 S.Ct. at 1343–44.

**10.** Count IV (punitive damages) is moot since all of the underlying claims have been dismissed.