**Donna Jean HARRIS, Plaintiff–Appellant,**

v.

**AMERICAN AIRLINES, INC., a Delaware corporation, and John Doe, a fictitious party, Defendant–Appellee.**

No. 92–36768.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 1994.

Decided June 1, 1995.

Christopher H. Kent, O'Connell, Goyak & DiLorenzo, Portland, OR, for plaintiff-appellant.

James N. Westwood, Steven O. Rosen, Pamela J. Stendahl, Miller, Nash, Wiener, Hager & Carlsen, Portland, OR, for defendant-appellee.

Before: ALARCON, NORRIS, and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

The issue before us is whether section 1305(a)(1) of the Federal Aviation Act, also known as the Airline Deregulation Act (the Act), 49 U.S.C.App. §§ 1301–1308 (1978 and Supp.1994) preempts state law claims against an airline for negligence, the intentional infliction of emotional distress, and violation of a state public accommodation statute where one passenger harassed another by making rude and obnoxious remarks indicative of racial animus.

On September 30, 1990, Donna Jean Harris (Harris), a black female, traveled from Dallas, Texas, to Portland, Oregon, on American Airlines flight 1289. Harris was seated in first class. She was the only black person on the airplane. Seated directly in front of Harris was a white male known only as John Doe.

During the course of the flight, John Doe allegedly had four drinks. Harris thought John Doe was drunk but she did not notice him stumbling and did not remember him slurring his words. He did not make any physically threatening gestures toward Har-

ris. After one flight attendant told John Doe that she would have to stop serving him alcoholic beverages, he went to the galley and returned with a drink. After takeoff, John Doe uttered a number of racial slurs, including the repeated use of the word "niggers."

Understandably, Harris felt humiliated and intimidated by John Doe's conduct. She became apprehensive to the point of tears.

Harris filed a complaint in state court in Oregon against American Airlines and John Doe.[1] In the complaint, Harris alleged claims for a violation of Oregon's Public Accommodation Act, ORS 30.670–30.685,[2] intentional infliction of emotional distress, and negligence. American Airlines removed the action to federal court on grounds of diversity jurisdiction.

American Airlines moved for summary judgment on the grounds that: (1) section 1305(a)(1) preempted Harris's state law claims; (2) American Airlines did not violate the Oregon Public Accommodations Act; (3) Harris's claim for intentional infliction of emotional distress should fail because American Airlines' acts were not outrageous in the extreme and because Harris did not suffer severe emotional distress; and (4) Harris could not recover on her negligence claim for purely emotional injury.

Although the Magistrate Judge found that Harris's state claims were not preempted, he recommended summary judgment on the merits. The district court adopted the Magistrate Judge's findings and recommendations in full and granted American Airlines' motion for summary judgment.

Harris timely appealed. We do not reach the merits of the state law claims, for we hold these claims are preempted.

## ANALYSIS

The preemption clause of the Act provides that

> All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of race, religion, sex, marital status, color or national origin.

---

1. John Doe was never served because Harris has been unable to discover his identity. According to American Airlines, passenger lists are destroyed between forty-eight and seventy-two hours after each flight deplanes.

2. ORS 30.670 states:

no State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.

49 U.S.C. § 1305(a)(1) (Supp.1994).

Three cases, all decided since the district court's judgment, are central to resolving the preemption issue under the Act. Two are from the Supreme Court: *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); and *American Airlines, Inc. v. Wolens*, —— U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). The third is from this circuit: *West v. Northwest Airlines*, 995 F.2d 148 (9th Cir.1993).

### I. The *Morales* Decision

In *Morales*, in interpreting the phrase "relating to," the Supreme Court held that this provision has an expansive reach:

> The ordinary meaning of ["relating to"] is a broad one—"to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with," Black's Law Dictionary 1158 (5th ed. 1979)—and the words thus express a broad pre-emptive purpose.... State enforcement actions having a connection with or reference to airline "rates, routes, or services" are pre-empted under 49 U.S.C. § 1305(a)(1).

*Morales*, 504 U.S. at 383, 112 S.Ct. at 2037.

The Court held preempted certain state consumer protection guidelines on fare advertising that "contained detailed standards governing, *inter alia*, the content and format of airline fare advertising," *id.* at 374, 112 S.Ct. at 2032–33, because "[o]ne cannot avoid the conclusion that [certain enumerated] aspects of the guidelines 'relate to' airline rates." *Id.* at 387, 112 S.Ct. at 2039. The Court observed that "compelling or restricting '[p]rice advertising surely 'relates to' price.'" *Id.* (quoting *Illinois Corporate Travel v. American Airlines, Inc.*, 889 F.2d 751, 754 (7th Cir.1989), *cert. denied*, 495 U.S. 919, 110 S.Ct. 1948, 109 L.Ed.2d 311 (1990)).

In its discussion, the Court stated that the preemptive scope of the Act was like that of the preemption provision in the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1144(a), which preempts all state laws "insofar as they ... relate to any employee benefit plan." *Id.* at 383, 112 S.Ct. at 2037. In addition, the Court rejected the argument that preemption under the Act extends "only [to] State laws specifically addressed to the airline industry...." *Id.* at 385, 112 S.Ct. at 2038. State laws of general applicability, it reasoned, may equally be subject to preemption. The Court emphasized, however, that " '[s]ome state actions may affect [air fares] in too tenuous, remote, or peripheral a manner' to have preemptive effect." *Id.* at 389, 112 S.Ct. at 2040 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)). The Court explained:

> [W]e do not ... set out on a road that leads to preemption of state laws against gambling and prostitution as applied to airlines. Nor need we address whether state regulation of the nonprice aspects of fare advertising (for example, state laws preventing obscene depictions) would similarly 'relat[e] to' rates; the connection would obviously be far more tenuous.

*Id.* at 389, 112 S.Ct. at 2040.

### II. The 1993 *West* Decision (*West II* )

In *West v. Northwest Airlines*, 995 F.2d 148, 151 (9th Cir.1993) (*West II* ), we decided on remand from the Supreme Court that certain state law claims were too tenuously connected to "rates, routes or services" to be preempted by section 1305(a)(1). In that case, a passenger purchased a non-refundable ticket and was "bumped" from an overbooked flight from Montana when Northwest Airlines decided to substitute a smaller aircraft for the flight. The passenger filed claims in state court for breach of the covenant of good faith and fair dealing under Montana law and for unjust discrimination under section 404(b) of the ADA, seeking compensatory and punitive damages under the state and federal claims.

In our pre-*Morales* opinion in *West v. Northwest Airlines*, 923 F.2d 657 (9th Cir. 1990) (*West I*), we distinguished between state legislation that merely has an affect on airline services and that relating directly to airline services. On remand, we viewed West's claims in light of the emphasis in *Morales* on the purpose of preemption under the Act:

> In crafting this clause, reasoned the Court, Congress intended to preempt state laws which interfered with the goal of deregulation of the airline industry.

> In so holding, the Supreme Court invalidated this court's approach to FAA preemption in our original Opinion in this case. Under our pre-*Morales* reasoning, we distinguished between state laws which "merely have an effect of airline services" and those involving an "underlying statute or regulation [which] itself relates to airline services," and held that only the latter are preempted by the ADA. *West v. Northwest Airlines, Inc.*, 923 F.2d 657, 660 (9th Cir.1990). *Morales* directly challenges this analysis.

*West II*, 995 F.2d at 151. In reading *Morales* we were uncertain whether Montana's good faith and fair dealing provision was "within that range of statutes too tenuously connected to airline regulation to trigger preemption under the [Act], what the *Morales* court called 'borderline questions.'" *West II*, 995 F.2d at 151. Therefore we "look[ed] outside the controlling statute for guidance.... [to] the agency regulations interpreting the [Act and found].... a detailed set of rules pertaining to airline 'oversales' or overbooking of flights." *Id.* (footnote omitted). One provision in the regulations "expressly contemplates that an injured passenger may seek relief in court for being bumped from an overbooked flight." *Id.* at 152. We held that West's state claims for compensatory damages were not preempted, so as to avoid "eviscerating" the provision. *Id.* However, we held the claim for punitive damages for overbooking preempted as contrary to the goals of deregulation; that is, "[o]verbooking and bumping are accepted forms of price competition[.]" *Id.*

### III. The *Wolens* Decision

In *American Airlines, Inc. v. Wolens*, —— U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the Supreme Court again discussed the scope of preemption under section 1305. American Airlines' frequent flyer program members argued that the modifications to the program should not apply retroactively.

> These cutbacks, plaintiffs maintained, violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act), 815 Ill.Comp.Stat. § 505 (1992) (formerly codified at Ill.Rev.Stat., ch. 1211/2, ¶ 261 et. seq. (1991)), and constituted a breach of contract. Plaintiffs currently seek only monetary relief.

—— U.S. at ——, 115 S.Ct. at 822.

The Supreme Court declined to focus on the "relating" phrase of the preemption clause:

> We need not dwell on the question whether plaintiffs' complaints state claims "relating to [air carrier] rates, routes or services." Morales, we are satisfied, does not countenance the Illinois Supreme Court's separation of matters "essential" from matters unessential to airline operations.

*Id.* at ——, 115 S.Ct. at 823. Instead, the Court found, "the ADA's preemption clause contains other words in need of interpretation, specifically, the words 'enact or enforce any law.'" *Id.*

The Court found the plaintiffs' claims under the Illinois Consumer Fraud Act preempted by section 1305(a)(1):

> [T]he Illinois Consumer Fraud Act serves as a means to guide and police the marketing practices of the airlines; the Act does not simply give effect to bargains offered by the airlines and accepted by airline customers.

*Id.*, —— U.S. at ——, 115 S.Ct. at 823. The Court specifically distinguished between enforcing a state law and enforcing agreements between individuals and airlines:

> We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for

the airline's alleged breach of its own, self-imposed undertakings.

*Id.* The Court reached this conclusion even though the breach of contract claim clearly is "related" to rates or services:

A remedy confined to a contract's terms simply holds parties to their agreements—in this instance, to business judgments an airline made public about its rates and services.

*Id.*

## IV. Harris's Claims and the Preemption Clause

### A. Whether the In–Flight Conduct of American Airlines Constitutes "Service" Under the Act.

 Harris argues that the incidents do not arise out of service, and thus are excluded from preemption. The allegations of Harris's complaint and her arguments before the Magistrate Judge, however, show that she is complaining directly about the service of alcoholic beverages that she claims caused John Doe's reprehensible conduct, and about the airline's response to that conduct. The complaint alleges:

Defendant Doe, a passenger occupying seat 3E ... consumed several alcoholic beverages before the airplane left the Dallas airport and consumed more alcoholic beverages during the trip.

Defendant Doe was severely under the influence of alcohol. Defendant American Airlines, knowing that Defendant Doe was under the influence of alcohol, continued serving Defendant Doe alcoholic beverages throughout the entire trip.

. . . .

Defendant American Airlines continued to serve Defendant Doe with alcoholic beverages and Defendant Doe continued to make extreme and outrageous [racist] remarks directed to Plaintiff.

... Defendant Doe went to the galley and returned with yet another alcoholic beverage....

The flight attendants employed by Defendant American Airlines promoted Defendant Doe's action by continuing to serve him alcoholic beverages and by failing to exercise any control to protect Plaintiff from such outrageous and discriminatory insults.

Complaint, paras. 5, 6, 11, 12, and 13. These allegations pertain directly to a "service" the airlines render: the provision of drink. Moreover, they pertain directly to how airlines treat passengers who are loud, boisterous, and intoxicated.

The appellant herself argues in her brief that:

She put herself under the protection of the airlines, paid the high price for the first class ticket to receive just that, first class service and first class protection.

Plaintiff–Appellant's Opening Brief at 15. And, while Harris argues that the failure to protect her from racial insult is not a "service," she relies on the established procedure the airline allegedly breached.

Citing to the deposition of flight attendant King, she argues:

The Flight Service College Training Outline for Defendant American Airlines provides that if a passenger appears to be intoxicated, the employee is to (1) inform the passenger that they are disturbing others and (2) ask them to settle down. (Ex. "D," Flight Service College Training Outline). Ms. King also stated that once passenger misconduct occurs, the procedure is: (1) the flight attendant attempts to deal with the passenger, then (2) the flight attendant can notify the cockpit and, if necessary, someone from the cockpit can come into the cabin. Further procedures outlined by Ms. King are that if someone from the cockpit cannot settle a passenger down, then authorities can meet the plane at the gate or, if the problem cannot wait that long, the flight can make an unscheduled landing to have the passenger removed.

CR 18, "Plaintiff's Response To Defendant's Motion for Summary Judgment," at 9–10 (filed 2/24/92). We conclude that the conduct of the flight crew relates to "service" under the ADA. *See Hingson v. Pacific Southwest Airlines,* 743 F.2d 1408, 1415–15 (9th Cir. 1984).

## B. Whether Harris's Claims Are Preempted

■ Having found that this case involves "service" under the ADA, we look to whether Harris's claims fit the exclusion to preemption pursuant to *Wolens.* In order to prevail, Harris would have to demonstrate that her claims fit within the narrow exclusion tailored by the Supreme Court in *Wolens.*

Harris seeks to apply Oregon state law, including the Oregon Public Accommodations Act, to the in-flight service procedures of American Airlines. In *Wolens,* the Supreme Court held that the passengers' claims under the Illinois Consumer Fraud Act were preempted because that Act served as a means to guide and police the marketing practices of the airlines. In this case, Harris seeks to subject the airlines' in-flight service to its passengers to Oregon state tort law. The Court in *Wolens* only excluded private contract terms from the wide scope of preemption, and Harris's claims do not come within this exclusion. Her claims are preempted by section 1305(a)(1).

AFFIRMED.

WILLIAM A. NORRIS, Circuit Judge, dissenting.

The Airline Deregulation Act ("ADA") preempts private causes of action "relating to rates, routes, or services of any air carrier." 49 U.S.C. § 1305(a)(1) (Supp.1994). The gravamen of Ms. Harris' personal injury claim is that the flight crew negligently failed to provide for her safety by not protecting her from Doe's abusive behavior. The majority, however, goes astray in characterizing Ms. Harris' claim in terms of a single piece of evidence she offers to prove negligence: that the flight crew gave Doe more to drink after observing his abusive behavior toward her, thus aggravating the risk of emotional and physical harm. Fixating on the allegation that drinks were served to Doe, the majority holds that Ms. Harris' personal injury claim is preempted because it "relates to" the "service[ ]" of beverages by airline carriers. In so holding, the majority has created an inter-circuit conflict with the Fifth Circuit. *See Hodges v. Delta Airlines, Inc.,* 44 F.3d 334 (5th Cir.1995) (en banc), *Smith v. America*

*West Airlines, Inc.,* 44 F.3d 344 (5th Cir. 1995) (en banc).

Frances Hodges, a passenger on a Delta Airlines flight, was injured when a case of rum fell on her from an overhead compartment. Ms. Hodges claimed that Delta was negligent in allowing the rum to be stored in the overhead compartment. In considering Delta's preemption defense, the Fifth Circuit acknowledged that "[a] facile analogy to *Morales* and the ERISA pre-emption cases could suggest that 'services' includes all aspects of the air carrier's 'utility' to its customers, hence, any tort claim may 'relate to' services as a result of its indirect regulatory impact on the airlines practices." *Hodges,* 44 F.3d at 337–38. However, the court rejected the *Morales* analogy, noting that "neither the ADA nor its legislative history indicates that Congress intended to displace the application of state tort law to personal physical injury inflicted by aircraft operations, or that Congress even considered such preemption." *Id.* at 338. The Fifth Circuit reasoned that by enacting regulatory statutes requiring air carriers to maintain liability insurance for "bodily injuries to or the death of any person, or for loss of or damage to property of others, resulting from the operation or maintenance of aircraft" (49 U.S.C.App. § 1371(q) (1994)), "Congress explicitly preserved airlines' duty to respond to tort actions, inferentially state law actions, for physical injury or property damage." *Hodges,* 44 F.3d at 339. Accordingly, the Fifth Circuit held that the ADA did not preempt Ms. Hodges' negligence claim for personal injury.

In a companion case to *Hodges,* the Fifth Circuit also held that the ADA did not preempt a personal injury claim brought by passengers charging America West Airlines with negligence for the airline crew's failure "to warn or protect ticketed passengers against hazards which were known or should have been known to them" by allowing a visibly deranged person, a hijacker, to board. *Smith,* 44 F.3d at 346. Noting that economic deregulation was the key to the ADA, the court held that the boarding "services" preempted under the ADA were "limited to economic decisions concerning boarding, e.g., overbooking or charter arrangements, and

contractual decisions whether to board particular ticketed passengers." *Id.* at 346–47. The Fifth Circuit reasoned that, "[i]f appellants ultimately recover damages, the judgment could affect the airline's ticket selling, training or security practices, but it would not regulate the economic or contractual aspects of boarding." *Id.* at 347.

Ms. Harris' case is on all fours with *Smith.* The two cases cannot be distinguished based upon any material difference in the facts. If we apply the reasoning of *Smith* to the facts of Ms. Harris' case, the result becomes clear. Ms. Harris sued for negligence based upon the flight crew's failure to protect her from Doe's abusive behavior and for exacerbating the known risk of emotional and physical injury by serving Doe more alcohol. Since economic deregulation is the key to the ADA, however, beverage "services" preempted under the ADA are limited to economic decisions regarding the provision of drinks, e.g., whether or not to provide drinks on any flight, and contractual decisions about whether to charge for the drinks or provide them free. *Id.* If Ms. Harris were ultimately to recover damages in this case, the judgment could affect the airline's training or security practices regarding how to protect passengers from harassment, but it would not regulate the economic or contractual aspects of the airline's provision of beverages. *Id.* If the Fifth Circuit's analytical framework is applied to Ms. Harris' claim, it is plainly not preempted by the ADA.

Finally, the majority's reliance on *American Airlines, Inc. v. Wolens,* — U.S. —, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) is misplaced.[1] *Wolens* held that the ADA did not preempt claims for an airline's breach of contractual obligations established by its own frequent flyer program. In the course of that opinion, the Supreme Court suggested that personal injury claims against airline carriers were not preempted by the ADA. *Id.* at —, 115 S.Ct. at 825 n. 7 (noting that

"American does not urge that the ADA preempts personal injury claims relating to airline operations"); *id.* at —, 115 S.Ct. at 827 n. 9 (noting that even the dissent's "'all is preempted' position leaves room for personal injury claims"). *See also id.* at —, 115 S.Ct. at 827 (STEVENS, J., concurring in part and dissenting in part) ("In my opinion, private tort actions based on common-law negligence or fraud, or on a statutory prohibition against fraud, are not preempted"); *id.* at — – —, 115 S.Ct. at 830 (O'CONNOR, J., concurring in the judgment in part and dissenting in part) ("my view of *Morales* does not mean that personal injury claims against airlines are always preempted").

I respectfully dissent.

---

1. The only other two cases the majority discusses also fail to provide support for its holding that Ms. Harris' claim is preempted because the cases did not involve personal injury claims. *See Morales v. Trans World Airlines,* 504 U.S. 374, 389, 112 S.Ct. 2031, 2040, 119 L.Ed.2d 157 (1992) (holding that the ADA preempts state consumer

protection guidelines on fare advertising); *West v. Northwest Airlines, Inc.,* 995 F.2d 148, 151 (9th Cir.1993) (holding that the ADA does not preempt a state law claim for compensatory damages for flight overbooking under Montana's good faith and fair dealing laws).