Kathleen Rachel MANNING, Plaintiff,

v.

SKYWEST AIRLINES, et al., Defendants.

No. CV 95–4567–WMB.

United States District Court,
C.D. California.

June 16, 1996.

Kevin Meenan, Kevin Meenan Law Offices, Pasadena, CA, for Kathleen Rachel Manning, plaintiff.

Jeffrey A. Worthe, Worthe Shaver & Hanson, Santa Ana, CA, for Skywest Airlines, and Delta Airlines.

## MEMORANDUM OPINION

WM. MATTHEW BYRNE, Jr., Chief Judge.

### I.  BACKGROUND

Plaintiff Kathleen Manning purchased tickets from Delta Air Lines [1] for round-trip air travel from Santa Maria, California, to Reno, Nevada.  The Santa Maria to Los Angeles leg of that trip, on April 23, 1994, was on defendant Skywest Airlines' flight 5490.

The Skywest plane, a small turboprop Fairchild SA–27, passed through wake turbulence of a large jet aircraft, a 747–400, while approaching Los Angeles.  According to the complaint, the Skywest pilot temporarily lost control of the Fairchild, and the craft pitched violently and dropped 1,000 feet.  The pilot regained control of the craft 24 seconds later, and the flight continued to Los Angeles without further incident.

Plaintiff contends that she was thrown violently into a bulkhead when the Skywest flight lost control, and consequently suffered a herniated cervical disc and emotional distress.  On April 21, 1995, plaintiff filed a complaint in the Superior Court for Santa

1.  Delta Air Lines was originally named as a defendant in this action, but was dismissed without prejudice on February 16, 1996, pursuant to the parties' stipulation.

Barbara County, alleging a single cause of action: a state law claim for negligence. The action was subsequently removed to this Court.

The Court had the parties brief the issue of whether plaintiff's complaint must be dismissed because her sole cause of action, for negligence, is preempted by the Airline Deregulation Act of 1978, as amended, 49 U.S.C.A. § 41713(b).[2] By minute order on May 23, 1996, the Court ruled that plaintiff's negligence claim was not preempted. This memorandum opinion elaborates on that order.

## II. STANDARD

A motion to dismiss shall be granted where the plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6). A complaint should not be dismissed "unless it appears beyond doubt that [the] plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir.1992) (quoting *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989)). The complaint's allegations of material fact are to be taken as true, and construed in the light most favorable to the plaintiff. *See id.*

## III. DISCUSSION

### A. *Statutory Provisions*

Prior to 1978, the Federal Aviation Act of 1958 allowed a federal agency the power to regulate interstate air fares and promulgate and enforce various requirements. *See Morales v. Trans World Airlines, Inc.*, 504 U.S.

374, 377, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157 (1992). But in 1978, Congress enacted the Airline Deregulation Act ("ADA"), in the belief that " 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality ... of air transportation services.' " *Id.* (*quoting* 49 U.S.C.App. §§ 1302(a)(4), (9) (Supp.1994), as amended 49 U.S.C.A. §§ 40101(a)(6), (12)).

Given those anticipated benefits of deregulation, Congress wanted "[t]o ensure that the States would not undo federal deregulation with regulation of their own." *Id.* Accordingly, the ADA mandated federal preemption:

> [A] state ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C.A. § 41713(b)(1).[3]

Certain pre–ADA provisions remained after 1978, however. Two are relevant here. First, a saving clause was retained that provides that "[a] remedy provided under this part is in addition to any other remedies provided by law." 49 U.S.C.A. § 40120(c).[4] Second, the ADA retained the requirement that certified air carriers have insurance "sufficient to pay, not more than the amount of the insurance, for bodily injury to, or death of, an individual or for loss of, or damage to, property of others, resulting from the operation or maintenance of the aircraft." 49 U.S.C.A. § 41112(a).[5]

---

2. In their briefs, both parties occasionally refer to the preemption provision as 49 U.S.C.App. § 1305(a), which was the codification before Public Law 103–272 (passed July 5, 1994), became effective.

3. The pre–1994 version of the preemption language is substantively identical:

> [N]o State ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.

49 U.S.C. § 1305(a)(1) (Supp.1994).

4. The saving clause as it read prior to its 1994 revision by Public Law 103–272 was similar:

> § 1506. Remedies not exclusive.
> Nothing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

The revision was made "to eliminate unnecessary words and for clarity and consistency in the revised title and with other titles of the United States Code." 49 U.S.C.A. § 40120, Historical and Statutory Notes.

5. The parties occasionally refer to the pre–1994 version of Title 49, in which the liability insurance requirement was embodied in section 1371(q).

## B. *The Harris Case*

In *Harris v. American Airlines, Inc.,* 55 F.3d 1472 (9th Cir.1995), a panel of the Ninth Circuit, over a dissent, found that a plaintiff's state law claims against an airline for negligence and for violation of Oregon's Public Accommodation Act were preempted by the ADA.

The plaintiff in *Harris* was a black woman passenger aboard an American Airlines flight from Dallas, Texas to Portland, Oregon. Seated directly in front of Ms. Harris' first class seat was a white male known only as John Doe, who was served several alcoholic drinks during the flight. The drunken Mr. Doe became increasingly obnoxious and uttered a number of racial slurs, thereby offending Ms. Harris and causing emotional distress. *Harris,* 55 F.3d at 1473.

Ms. Harris sued American Airlines in state court for negligence and for violation of the Oregon Public Accommodation Act, which mandated full and equal accommodation without discrimination on account of race. *See* O.R.S. 30.670. The airline removed the case to federal district court, which granted summary judgment for the airline on the merits. On appeal, the Ninth Circuit did not reach the merits, instead finding that both the negligence claim and the statutory claim were preempted by the ADA. *Id.*

The *Harris* court cited two Supreme Court cases in reaching its conclusion.[6] The first was *Morales,* 504 U.S. 374, 112 S.Ct. 2031, in which the Supreme Court held that certain state consumer protection guidelines governing the content and format of fare advertising were "related to" airline rates, and therefore were preempted by the ADA. In so holding, the Court noted that the preemptive "related to" language is expansive:

> The ordinary meaning of ["relating to"] is a broad one—"to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with," Black's Law Dictionary 1158 (5th ed. 1979)—and the words thus express a broad pre-emptive purpose.

*Id.* at 383, 112 S.Ct. at 2037; *see also Harris,* 55 F.3d at 1474. The *Morales* Court reasoned that, as the relevant language of the ADA and ERISA, 29 U.S.C. § 1144(a), are identical, it would be appropriate to adopt the same standard for both. The analogy to ERISA led to the conclusion that "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are preempted under [49 U.S.C.A. § 41713(b)(1)]." *Morales,* 504 U.S. at 384, 112 S.Ct. at 2037.

In light of the expansive net cast in *Morales,* the *Harris* court had no difficulty in concluding that the state law claims "related to" American Airlines' service. The thrust of Ms. Harris's complaint was that the airline's flight attendants continued to ply Mr. Doe with drinks, and did nothing to protect Ms. Harris, despite Mr. Doe's patent drunkenness and obnoxious ranting. Those "allegations pertain directly to a 'service' the airlines render: the provision of drink. Moreover, they pertain directly to how airlines treat passengers who are loud, boisterous, and intoxicated." *Harris,* 55 F.3d at 1476.

"Having found that [the] case involve[d] 'service' under the ADA," the *Harris* court turned its attention "to whether the plaintiff's claims fit within the narrow exclusion tailored by the Supreme Court in [*American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995)]." *Harris,* 55 F.3d at 1477.

*Wolens* stemmed out of American Airlines' devaluation of earned but unredeemed frequent flyer miles through the imposition of "capacity controls" and "blackout dates." *Wolens,* 513 U.S. at ——, 115 S.Ct. at 822. American's frequent flyers brought a class action against the airline for breach of contract and for violations of the Illinois Con-

---

6. The *Harris* court also described one other case, *West v. Northwest Airlines,* 995 F.2d 148, 151 (9th Cir.1993) (*"West II"*), wherein the Ninth Circuit found preempted a state law punitive damage claim for overbooking a flight and consequently bumping passengers. The practice of overbooking and bumping were found to be "ac-cepted forms of price competition," and therefore related to price within the meaning of the ADA preemption provision. *Id.* at 152. A state claim for compensatory damages, however, was held not preempted, so as not to "eviscerate" a federal regulation that contemplated a bumped passenger seeking redress in court. *Id.*

sumer Fraud and Deceptive Business Practices Act.

The analysis in *Wolens* focused not on whether the plaintiffs' claims "related to service," but rather on whether they would constitute a state's "enact[ment] or enforce[ment] of any law." *See id.* at ——, 115 S.Ct. at 823. The Supreme Court explained that the Illinois consumer protection statute "serves as a means to guide and police the marketing practices of the airlines; [it] does not simply give effect to bargains offered by the airlines and accepted by airline customers." *Id.* at ——, 115 S.Ct. at 823. By contrast, contractual terms and conditions between airlines and passengers do not constitute a state's enactment or enforcement of "a law, regulation, or other provision having the force and effect of law" as recited in the preemption provision, 49 U.S.C.A. § 41713(b)(1). *Wolens,* 513 U.S. at ——, 115 S.Ct. at 824 (*citing Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 505, 112 S.Ct. 2608, 2612, 120 L.Ed.2d 407 (1992) (plurality opinion) ("[A] common law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement imposed under State law' within the meaning of [Federal Cigarette Labeling and Advertising Act] § 5(b)")).

Accordingly, the *Wolens* Court found that the state statutory cause of action was preempted by the ADA, but the common law breach of contract claim was not.

The *Harris* court apparently read *Wolens* as setting out a solitary, narrow exception to the general rule of preemption articulated in *Morales.* It noted that the "Court in *Wolens* only excluded private contract terms from the wide scope of preemption, and Harris's claims do not come within this exclusion." *Harris,* 55 F.3d at 1477. Accordingly, both Ms. Harris's common law and Oregon statutory claims were held preempted.

### C. Interpretation of "Services" After Harris

The *Harris* decision is contrary to the weight of authority interpreting ADA preemption [7]; nonetheless, this Court is bound by the *Harris* conclusion that a common law negligence action constitutes a state's enactment or enforcement of a law, and is therefore preempted if it relates to the "price, route, or service of an air carrier." Thus, the question here is whether defendant's allegedly negligent conduct relates to "service of an air carrier" within the meaning of the ADA's preemption provision, 49 U.S.C.A. § 41713(b)(1). If the conduct were to relate to such "service," then plaintiff's claim would be preempted.[8]

**7.** The Ninth Circuit's conclusion that the *Harris* negligence claim was preempted is contrary to the conclusions of both of the other appellate courts that have addressed the issue.

The Fifth Circuit addressed the issue first, and found that actions preempted because they "related to services" did not include "state tort actions for personal physical injuries or property damage caused by the operation and maintenance of aircraft." *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336 (5th Cir.1995) (*en banc*). *Hodges* is discussed in more detail *infra.*

The Supreme Court of Texas is the most recent appellate court to address the issue. In a carefully reasoned opinion in *Continental v. Kiefer,* 920 S.W.2d 274 (Tex.1996), that court concluded that ordinary negligence actions for personal injury do not constitute a state's enactment or enforcement of law, so are not preempted by the ADA. The *Continental* court, although addressing the preemption issue after *Harris,* did not comment on the Ninth Circuit position. *See Continental,* 920 S.W.2d at 282–83 (referring to the Fifth Circuit in *Hodges* as "the only other court since *Wolens* to address issues essentially the same as the ones before us").

*Harris* was also contrary to most district court decisions that came before it. Prior to *Harris,* district courts had consistently found ordinary negligence cases to fall outside the preemptive language of the ADA. Most of those courts "apparently reason[ed] that the term 'airline services' as employed in [section 41713(b)(1)] 'does not include or contemplate as a service the duty to exercise ordinary care.'" *Stagl v. Delta Air Lines,* 849 F.Supp. 179, 182 (E.D.N.Y.1994) (*quoting Butcher v. City of Houston,* 813 F.Supp. 515, 518 (S.D.Tex.1993)); *see also, e.g., Curley v. American Airlines,* 846 F.Supp. 280, 284 (S.D.N.Y.1994); *Bayne v. Adventure Tours USA, Inc.,* 841 F.Supp. 206, 208 (N.D.Tex.1994); *In re Air Disaster,* 819 F.Supp. 1352, 1363 (E.D.Mich. 1993).

**8.** In addition to arguing that plaintiff's claim "relates to service," defendant also argues that it relates to the Skywest flight's "route"—*i.e.* the claim relies on a contention that the Skywest flight's path passed too close to the preceding 747–400. Thus, defendant concludes, the negligence claim also should be preempted because it "relates to routes." *See* 49 U.S.C.A. § 41713(b)(1).

■ The *Harris* court did not explicitly define "service" within the meaning of the ADA's preemption provision.[9] *See Harris,* 55 F.3d at 1476. This Court concludes that plaintiff's negligence claim does not relate to "service."

The facts of *Harris* and its progeny that have found preemption of negligence claims are distinguishable from the instant case. Plaintiff here alleges that the Skywest pilot was negligent in flying through the wake turbulence of a large jet, and losing control of the aircraft for 24 seconds. Thus, the allegedly negligent conduct was defendant's "operation" of the aircraft, as defined under the ADA. *See* 49 U.S.C.A. § 40102(a)(32) (defining "operation of aircraft").

By contrast, *Harris* dealt with the defendant air carrier's treatment of passengers and provision of beverages. It did not relate to the actual operation of the aircraft. *See Harris,* 55 F.3d at 1473. Two reported district court cases have relied on *Harris* to find ADA preemption of negligence claims; neither of those cases concerned the operation of aircraft. In *Costa v. American Airlines, Inc.,* 892 F.Supp. 237, 238 (C.D.Cal.1995), the plaintiff was injured "when another unidentified passenger opened an overhead bin, causing a bag to fall on her as she sat in an aisle seat."[10] The plaintiff in *Stone v. Continental Airlines, Inc.,* 905 F.Supp. 823, 825–26 (D.Hawaii 1995), alleged that the defendant airline "failed to take precautions to control a disorderly, intoxicated and potentially violent passenger."

■ Thus, neither *Harris* nor its progeny have found that the ADA preempts a negligence claim where the allegedly tortious conduct was the operation of the aircraft. That is not surprising, as there are five distinct reasons that militate against interpretation of the term "service of an air carrier" to include the operation of the aircraft itself.

### 1. Tort immunity

First, defendant's interpretation would be tantamount to a grant of tort immunity for the negligent operation of aircraft, where no such effect appears to be contemplated by the legislative history.

If plaintiff's state negligence claim were preempted here, she would be left without a remedy. As the *Wolens* Court suggested, there is no federal cause of action for her to pursue; it is "[not] plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law," a range of tort actions against airlines. *Wolens,* 513 U.S. at ——, 115 S.Ct. at 825 (referring to adjudication of breach of contract claims). "It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured" by air carriers' negligent operation. *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 251, 104 S.Ct. 615, 623, 78 L.Ed.2d 443 (tort punitive damages not preempted by Atomic Energy Act).

### 2. Supreme Court Dicta in Wolens

Further, each of the three opinions[11] in *Wolens* —even that of Justice O'Connor, who

---

That is not persuasive. First, "routes" more properly refers to the provision of flights between certain locations—as in "Skywest has a route from Santa Maria to Los Angeles." It does not refer to the particular flight paths used on those routes. Even if defendant's definition of "routes" were correct, the route need not have been negligently selected in order for plaintiff to succeed on her negligence claim. Instead, the claim might succeed on the grounds that the pilot negligently did not regain control of the aircraft until after 24 seconds of violent motion.

9. Nor should it have. As the Supreme Court advised in *Wolens,* "in our system of adjudication, principles seldom can be settled 'on the basis of one or two cases, but require a closer working out.'" *Wolens,* 513 U.S. at ——, 115 S.Ct. at 827 (quoting Pound, Survey of the Con-

ference, 14 U.Cin.L.Rev. 324, 339 (1940)). The *Harris* court was prudent to leave to future cases, like this one, the further "working out" of the definition of air carrier "service."

10. Although the district court in *Costa* found that *Harris* compelled a finding of preemption, it noted that "[i]t seems unlikely that Congress or the Supreme Court would have intended this broad result or the impact it may have on bodily injury claims arising from other kinds of airline services." *Costa,* 892 at 239.

11. Justice Ginsburg delivered the opinion of the Court, which Chief Justice Rehnquist and Justices Kennedy, Souter, and Breyer joined. Justice Stevens filed an opinion concurring in part and dissenting in part. Justice O'Connor, in an opinion joined in most part by Justice Thomas,

had the most expansive view of ADA pre-emption—contain *dicta* suggesting that "personal injury claims relating to airline operations" would not be preempted. *See id.* at —— n. 7, 115 S.Ct. at 825 n. 7 (noting that both defendant airline and United States, as *amicus curiae*, agreed that safety-related personal injury claims would likely not be preempted); *id.* at —— ——, 115 S.Ct. at 827–28 (Stevens, J., pointing out that "[p]resumably, if an airline were negligent in a way that somehow affected its rates, routes, or services, and the victim of the airline's negligence were to sue in state court, the majority would not hold all common-law negligence rules to be pre-empted by the ADA"); *id.* at ——, 115 S.Ct. at 830 (O'Connor, J., acknowledging that "[a]s the Court recognizes, ... my view of *Morales* does not mean that personal injury claims against airlines are always preempted").

### 3. *Market Efficiency as a Rationale for Deregulation*

Moreover, the same rationale that supported the *Wolens* finding of no preemption in routine breach of contract claims also applies here. The *Wolens* Court noted the following:

> The ADA, as we recognized in *Morales*, ... was designed to promote "maximum reliance on competitive market forces." ... Market efficiency requires effective means to enforce private agreements.... As stated by the United States [as *amicus curiae* ]: "The stability and efficiency of the market depend fundamentally on the enforcement of agreements freely made, based on needs perceived by the contracting parties at the time." That reality is key to sensible construction of the ADA.

*Id.* at ——, 115 S.Ct. at 824 (citations omitted).

Similarly, the common law liability for negligence promotes an efficient market. Liability for negligence internalizes the costs associated with unreasonable acts. Without such a tort regime in place, each marginal dollar not spent on safety measures would save an airline one dollar, but would cost it nothing in terms of expected liability. That would distort the cost-benefit calculations of the airlines, potentially causing them to under-invest in operational safety. It is precisely that sort of inefficient allocation of resources that the reliance on market mechanisms through deregulation was meant to avoid. *See* 49 U.S.C.A. § 40101(a)(6).

### 4. *Saving Clause*

■ Also, as the *Wolens* Court found with respect to breach of contract claims, the negligence claims' survival of ADA preemption "also makes sense of Congress' retention of the FAA's saving clause." *Wolens*, 513 U.S. at ——, 115 S.Ct. at 826; *see also* 49 U.S.C.A. § 40120(c). The preemption clause, read together with the saving clause, prevents States from imposing their own substantive standards for rates, routes, or services, but does not preclude the liability of air carriers for negligent operation of aircraft. *Cf. Wolens*, at ——, 115 S.Ct. at 826.

### 5. *Liability Insurance Requirements*

Finally, Congress' retention of the requirement of liability insurance indicates Congress' desire not to grant tort immunity to the airlines. *See* 49 U.S.C.A. § 41112(a).[12] If, as defendant's reading of *Harris* requires, all tort claims are preempted by section 41713(b)(1), then the requirement for liability insurance would be superfluous.[13]

---

concurred in the judgment and dissented in part. Justice Scalia took no part in the consideration or decision of the case. *Wolens*, 513 U.S. at ——, 115 S.Ct. at 820.

**12.** As discussed *supra*, the ADA requires that air carriers must have insurance "sufficient to pay ... for bodily injury to, or death of, an individual or for loss of, or damage to, property of others, resulting from the operation or maintenance of the aircraft." 49 U.S.C.A. § 41112(a).

**13.** Defendants here argue that the insurance requirement does not imply survival of state law

negligence claims, because there are other forms of liability—*i.e.*, federal claims—to which the insurance provision might pertain. In particular, defendants point to the Warsaw Convention of 1929 (concerning international air travel), the Death on the High Seas Act, 46 U.S.C. §§ 761, *et seq.*, and unspecified "various claims in admiralty."

That argument is not convincing. It is difficult to fathom why Congress would retain the insurance requirement solely for the purposes of international or maritime travel, without once mentioning the words "international," "foreign," or

In *Hodges,* 44 F.3d at 338, the Fifth Circuit, *en banc,* relied largely on the liability insurance requirement in holding that a "complete preemption of state law in this area would have rendered any requirement of insurance coverage nugatory."[14] Looking to the precise language of the insurance provision, the court concluded that Congress intended generally to preempt State action relating to "services," but "explicitly" preserved state tort liability stemming from the "operation or maintenance of the aircraft." *See id.* at 338–39.

Although it is questionable that Congress "explicitly" preserved airlines' tort liability through a provision that mandates insurance coverage, *see id.* at 339, this Court concludes that what Congress meant to be preempted through its definition of "service" could not have included common law liability for injuries inflicted through negligent maintenance or operation of aircraft.

Unlike in *Harris, Costa,* and *Stone,* defendant here was allegedly negligent in the operation of its aircraft. Accordingly, plaintiff's action is not "related to service" as defined by the ADA's preemption provision.

## IV. CONCLUSION

Plaintiff's negligence claim is not preempted by the ADA; the motion to dismiss is DENIED.

---

"maritime" in the provision. *See* 49 U.S.C.A. § 41112(a). It is more mysterious still why insurance coverage for exclusively international flights would be required by a separate insurance provision in the Small Community Air Service Subchapter, 49 U.S.C.A. §§ 41731–41742, which deals exclusively with domestic air travel. *See* 49 U.S.C.A. § 41741.

**14.** The plaintiff in *Hodges* was a passenger aboard a Delta Air Lines flight from the Caribbean to Miami. During the flight, another passenger opened an overhead compartment above the plaintiff, allowing a case of rum to fall on the plaintiff and cut her arm and wrist. *See Hodges,* 44 F.3d at 335. The plaintiff brought a state law action against the airline, alleging that it negligently allowed storage of the case of rum in the overhead compartment. *See id.*