Wendy **MEINHOLD** and William **Meinhold, Plaintiffs,**

v.

**TRANS WORLD AIRLINES, INC., et al., Defendants.**

No. CV 96–6077 DPP (VAPx).

United States District Court, C.D. California.

Dec. 6, 1996.

James O. Heiting, Heiting & Irwin, Riverside, CA, for Wendy Meinhold, William Meinhold.

Jeffrey A. Worthe, Worthe Shaver & Hanson, Santa Ana, CA, for Trans World Airlines, Inc.

### Order Denying Defendant Trans World Airlines, Inc.'s Motion for Summary Judgment

PREGERSON, District Judge.

Defendant Trans World Airlines, Inc.'s motion for summary judgment came before the Court on November 18, 1996. After reviewing and considering the materials submitted by the parties and hearing oral argument, the Court denies the defendant's motion.

### I. Introduction

Plaintiff Wendy Meinhold was a passenger traveling from Newark, New Jersey to Ontario, California on board an airplane owned and operated by defendant Trans World Airlines, Inc. ("TWA"). Prior to landing in St. Louis, Missouri (an intermediate stop), a flight attendant opened an overhead bin above Meinhold's seat, allegedly causing Meinhold's lap-top computer to fall out of the bin and strike her on the head.

Meinhold filed an action alleging negligence. Her husband, William Meinhold, filed a derivative action for loss of consortium. Meinhold filed her action in state court; TWA removed the case to federal court.

TWA now moves for summary judgment based on its assertion that the Airline Deregulation Act of 1978 preempts the Meinholds' claims.

### II. Discussion

Prior to the enactment of the Airline Deregulation Act of 1978 ("ADA"), the Federal Aviation Act of 1958 authorized the Civil Aeronautics Board ("CAB") to regulate the interstate airline industry, including regulation of fares and deceptive trade practices. *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222–23, 115 S.Ct. 817, 821, 130 L.Ed.2d 715 (1995).

The ADA was enacted "to encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quality, variety and price of air services." H.R.Conf.Rep. No. 95–1779, 95th Cong., 2d Sess. 53 (1978), *reprinted in*, 1978 U.S.C.C.A.N. 3737, 3773. The ADA largely deregulated the domestic airline industry.

In order to prevent the states from undoing federal deregulation, the ADA included Section 1305(a)(1), which reads: "No State ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier...." [1]

The Supreme Court has held that certain state law claims are preempted by the ADA. In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157 (1992), the Court addressed the "Travel Industry Enforcement Guidelines," which were promulgated by the National As-

---

1. In 1994, Congress revised this clause to read: "[A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier...." 49 U.S.C. § 41713(b)(1). This change was not intended to be substantive. *See Wolens*, 513 U.S. at 222–23, 115 S.Ct. at 821.

sociation of Attorneys General ("NAAG") and purported to govern the content and format of airline fare advertising. Several states attempted to enforce the guidelines through their consumer protection laws to stop allegedly deceptive advertising by airlines. The Court determined that the states' actions "relat[ed] to [airline] rates, routes, or services," and therefore held that the fare advertising provisions of the guidelines were preempted. *Id.* at 418, 112 S.Ct. at 2054.

The *Morales* court noted that the NAAG guidelines set "binding requirements as to how airline tickets may be marketed," which "would have [had] a significant impact upon ... the fares [airlines] charge[d]." *Id.* at 390, 112 S.Ct. at 2040. The Court further noted that the airlines would not have "*carte blanche* to lie and deceive customers" because the Department of Transportation retained the power to prohibit advertisements that did not further competitive pricing. *Id.* at 390–91, 112 S.Ct. at 2040–41. *Morales* specifically "left room for state actions 'too tenuous, remote, or peripheral ... to have preemptive effect.'" *Wolens,* 513 U.S. at 224, 115 S.Ct. at 822 (quoting *Morales,* 504 U.S. at 390, 112 S.Ct. at 2040).

In *Wolens,* the Court addressed claims brought in two class actions that arose from changes made by American Airlines to its frequent flyer program. The plaintiffs complained that American Airlines modified the program, devaluing credits that the members of the program had already earned. The plaintiffs brought suit in state court for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. The Illinois Supreme Court ruled that the lawsuits were not preempted because the frequent flyer program was not "essential" to American Airlines' services, but was only of "peripheral" importance. *Wolens,* 513 U.S. at 224, 115 S.Ct. at 822 (quoting *Wolens v. American Airlines, Inc.,* 147 Ill.2d 367, 373, 168 Ill.Dec. 133, 589 N.E.2d 533 (1992)).

The U.S. Supreme Court reversed the Illinois Supreme Court's decision to permit the plaintiffs' consumer fraud claims, but affirmed its holding that the plaintiffs' breach of contract claims were not preempted. The Court held that the Illinois Consumer Fraud

Act served as a means "to guide and police the marketing practices of the airlines," and therefore was preempted by the ADA. *Id.* at 228–29, 115 S.Ct. at 824. However, the Court held that the ADA did not preempt the plaintiffs' contract claims, which sought "recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.*

The Court did not decide what types of claims—other than contract claims—would not be preempted by the ADA. However, in a footnote, the Court observed that federal law requires air carriers to maintain "insurance in an amount prescribed by the DOT, to cover claims for personal injuries and property losses 'resulting from the operation or maintenance of the aircraft.'" *Id.* at 231 n. 7, 115 S.Ct. at 825 n. 7 (quoting Brief for United States as *Amicus Curiae*). It also noted American Airline's concession that the ADA did not preempt personal injury claims relating to airline operations. *Id.* (citing Transcript of Oral Argument and Brief for United States as *Amicus Curiae* ("It is ... unlikely that Section 1305(a)(1) preempts safety-related personal injury claims relating to airline operations.")).

Justice Stevens, concurring in part and dissenting in part, stated that "[p]resumably, if an airline were negligent in a way that somehow affected its rates, routes, or services, and the victim of the airline's negligence were to sue in state court, the majority would not hold *all* common-law negligence rules to be preempted by the ADA." *Id.* at 236, 115 S.Ct. at 828 (Stevens, J., concurring in part, dissenting in part) (emphasis added).

Justice O'Connor, concurring in part and dissenting in part, argued that all of the plaintiffs' claims—i.e., contract claims included—were preempted. However, with respect to personal injury claims, Justice O'Connor stated that her "view of *Morales* does not mean that personal injury claims are always preempted." As an example of an action that would not be preempted by the ADA under her view of the law, Justice O'Connor cited *Stagl v. Delta Air Lines,* 849 F.Supp. 179, 182 (E.D.N.Y.1994), which held that a tort claim against an airline for personal injury was not preempted because it

was not related to airline "services" within the meaning of the ADA. *Id.* at 241–42, 115 S.Ct. at 830 (O'Connor, J., concurring in part and dissenting in part).

TWA argues that opening the overhead storage bins are "services" within the meaning of the ADA. TWA bases its argument on *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336 (5th Cir.1995) (en banc), which stated that:

> "Services" generally represent a bargain for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, *and baggage handling,* in addition to the transportation itself.... It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.

*Id.* (quoting *Hodges v. Delta Airlines, Inc.,* 4 F.3d 350, 354 (5th Cir.1993) (emphasis added)).

What TWA omitted from its discussion of *Hodges,* however, is that the *Hodges* court, after discussing the definition of "services," held that the plaintiff's claims for personal injuries, which occurred when an overhead storage bin was opened and a bottle of rum dropped on the plaintiff, were not preempted by the ADA. The court concluded that the CAB's statements when implementing the ADA supported the view that "the ADA was concerned solely with economic deregulation, not with displacing state tort law." *Id.* at 337.

The *Hodges* court also noted that federal regulations require air carriers to maintain insurance sufficient to cover "amounts for which ... such air carrier may become liable for bodily injuries to or the death of any person, or for loss of or damage to property

of others, resulting from the operation or maintenance of aircraft under such certificate." *Id.* at 338 (quoting 49 U.S.C.App § 1371(q) (1994)). The *Hodges* court noted that if the ADA completely preempted all state tort claims for personal injury, such preemption "would have rendered any requirement of insurance coverage nugatory." [2] *Id.; see also Ducombs v. Trans World Airlines,* 937 F.Supp. 897 (N.D.Cal.1996) (making a similar observation).

The overwhelming majority of courts that have addressed the issue of ADA preemption of state tort law claims for personal injuries have held that such claims are not preempted by the ADA. *See, e.g., Trinidad v. American Airlines, Inc.,* 932 F.Supp. 521 (S.D.N.Y. 1996); *Bieneman v. City of Chicago,* 864 F.2d 463 (7th Cir.1988); *Moore v. Northwest Airlines, Inc.,* 897 F.Supp. 313 (E.D.Tex. 1995).

The only decision that gives this Court pause is *Harris v. American Airlines, Inc.,* 55 F.3d 1472 (9th Cir.1995). In *Harris,* an airline served a passenger four drinks, after which the drunk passenger uttered a number of racial slurs directed towards the plaintiff. The plaintiff then sued the airline alleging violation of Oregon's Public Accommodation Act, intentional infliction of emotional distress, and negligence.

The court found that the plaintiff's claims were preempted because her "complaint and her arguments ... show that she is complaining directly about the service of alcoholic beverages that she claims caused John Doe's reprehensible conduct, and about the airline's response to that conduct." *Id.* at 1476. The court held that these allegations "pertain[ed] directly to how airlines treat passengers who are loud, boisterous, and intoxicated," and that "the conduct of the flight crew relates to services under the ADA." *Id.* Therefore, the court held that the plaintiff's claims were preempted.

*Harris,* as TWA asserts, defined "services" broadly. However, the Court finds that the

---

2. In its reply brief, TWA argues that airlines are required to maintain liability insurance to cover injuries that are not preempted, which under TWA's analysis, includes only personal injury

claims resulting from international travel because those claims are governed by the Warsaw Convention. The Court finds this argument unconvincing.

*Harris* court could not have intended to hold that the ADA preempts *all* common law personal injury claims, particularly not those of the sort presented by this case. Any other conclusion would eliminate all personal injury claims and leave injured persons without a remedy.[3]

In short, wherever the line lies that distinguishes permissible actions from preempted ones, the case at bar falls on the permissible side of that line.[4] Allowing a passenger to sue an airline that negligently drops a lap-top computer stored in an overhead bin certainly will not interfere with Congress' goal of encouraging the "development of an air transportation system driven to higher levels of innovation and efficiency by economic competition." *Von Hundertmark v. Boston Prof'l Hockey Assoc., Inc.,* 1996 WL 118538 at *5 (E.D.N.Y., March 7, 1996).

This Court's conclusion is supported by Judge Fern M. Smith's decision in the Northern District of California. In *Ducombs,* an airline passenger sued the airline for negligence after she was hit on the head by a lap-top computer that fell from an overhead compartment. The defendant airline argued that the plaintiff's claim was preempted because the claim related to baggage storage, which it argued was a "service" and thus preempted by the ADA. *Ducombs,* 937 F.Supp. at 898. The *Ducombs* court, however, held otherwise. *Id.* at 900.

The *Ducombs* court noted that *Harris* had interpreted "services" broadly enough to result in preemption of claims arising from the airline's beverage service, but *Ducombs* declined to extend this interpretation beyond beverage service to baggage stored in the overhead compartments. The *Ducombs* court stated that its narrow interpretation of *Harris* was supported by "the fact that the Ninth Circuit did not see fit to distinguish or otherwise refuse to adopt the reasoning of the numerous cases from other circuits in which preemption was discussed and rejected." *Id.* at 901. The court held that "[a]b-

sent some indication from the Ninth Circuit that it intended the drastic result of creating a split in the circuits, this court declines to broaden the narrow holding of *Harris.*" *Id.; but cf. Costa v. American Airlines, Inc.,* 892 F.Supp. 237, 239 (C.D.Cal.1995) (noting, in a case involving personal injury resulting from an object falling from an overhead bin, that "[i]t seems unlikely either Congress or the Supreme Court would have intended this broad result or the impact it may have on bodily injury claims arising from other kinds of airline services [but] all of the acts or omissions complained of in this case fall within the broad *Harris* definition [of 'services']").

### III. Conclusion

The ADA was not intended to preempt personal injury claims sounding in state tort law. This finding is evidenced by Supreme Court dicta, the existence of airline liability insurance, the overwhelming majority of case law, and the goals of the ADA. Therefore, the Court holds that personal injury claims such as those brought by the Meinholds are not preempted by the ADA and the Court denies TWA's motion for summary judgment.

**IT IS SO ORDERED.**

---

3. The ADA did not create an alternative scheme for compensating injured domestic airline passengers.

4. An example of a preempted action would be litigation based on a state law providing for

minimum liability on damaged baggage. In the case before the Court, however, Meinhold seeks recovery for injuries to her person, not damage to her baggage.